UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BELL PRODUCTS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HOSPITAL BUILDING AND EQUIPMENT COMPANY, et al.,<br><br>　　　　　Defendants. | Case No. 16-cv-04515-JSC<br><br>**ORDER RE: DEFENDANT HBE CORPORATION'S MOTION TO STAY**<br><br>Re: Dkt. No. 7 |

Plaintiff Bell Products, Inc. filed suit in Mendocino County Superior Court against Defendants Hospital Building and Equipment Company, a division of HBE Corporation ("HBE"); Hospital Designers, Inc. ("HDI"), a subsidiary of HBE; Travelers Casualty and Surety Company of America ("Travelers"); and the Continental Insurance Company ("Continental") for claims arising out of a subcontract relating to the construction of a hospital in California. Defendants timely removed the case to federal court on the basis of diversity jurisdiction. (Dkt. No. 1.[1]) Now pending before the Court is HBE's motion to stay pending arbitration. (Dkt. No. 7.) Having carefully considered the parties' submissions, and having had the benefit of oral argument on October 6, 2016, the Court GRANTS the motion to stay. The Court further concludes that the arbitration agreement's venue provision is enforceable.[2]

## BACKGROUND

On June 18, 2012, HBE entered into a design-build contract with Willits Hospital, Inc., dba Frank R. Howard Memorial Hospital, to construct the Frank R. Howard Memorial Hospital

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 12.)

1  located in Willits, California.  (Dkt. No. 7-1 ¶ 2; Compl. ¶ 11.)  On June 19, 2012, HBE solicited
2  bid proposals from subcontractors to work on portions of the project; the solicitation package
3  included project plans and specifications that were prepared by HDI.  (Compl. ¶ 12.)  Plaintiff
4  submitted a bid for the project based on the received plans and specifications.  (*Id.*)

5        On July 20, 2012, Plaintiff and HBE entered into a written subcontract whereby Plaintiff
6  agreed to furnish labor, material, supervision and equipment, tools, supplies, holsting, and
7  scaffolding for the project.  (Dkt. No. 7-1 ¶ 4 & at 4-25 (Ex. A).)  On July 31, 2012, the parties
8  entered into a revised and reissued subcontract.  (*Id.*; Compl. ¶ 13.)  The revised subcontract
9  provided a set of Specific Requirements, including a dispute resolution provision that states, in
10 relevant part:

> Except as other provided below, all unresolved claims and disputes between Contractor and Subcontractor arising out of or relating to the Subcontract, whether for breach of contract, in tort, statutory, or otherwise, shall be decided by arbitration under the Construction Industry Arbitration Rules of the American Arbitration Association. Unless Contractor requests the locale to be the place of the Project, the arbitration locale shall be St. Louis, Missouri.

15 (Dkt. No. 7-1 at 11.)  The subcontract also incorporated by reference a set of special conditions,
16 dated May 12, 2012, that provides that "[t]he law of the Project location governs the validity,
17 enforcement, and interpretation of the Subcontract; however, the Federal Arbitration Act governs
18 the Subcontract arbitration terms."  (Dkt. No. 7-1 at 19 ¶ 31.)  The parties disagree as to the
19 applicability of the May 2012 special conditions.

20       Under the original project schedule, Plaintiff was required to begin performing the
21 mechanical scope of work on August 10, 2012, with substantial completion of the project by May
22 20, 2014 and completion for inspection and occupancy by August 12, 2014.  (Compl. ¶ 14.)  HBE
23 subsequently abandoned the original schedule and issued multiple new schedule updates,
24 extending the amount of time required to complete the project.  (*Id.* ¶ 15.)  According to Plaintiff,
25 the various schedule changes resulted from HBE's initial submission of plans and specifications,
26 prepared by HDI, that failed to comply with the California Office of Statewide Health Planning
27 and Development guidelines and the California Building Code as well as HBE's ineffective and
28 deficient management, supervision, and administration of the project.  (*Id.* ¶¶ 18, 20, 21.)  Plaintiff

verbally agreed to and complied with the schedule modifications while also notifying HBE that extending the project timeline would result in additional costs. (*Id.* ¶¶ 16-17.) As a result of HBE's conduct, Plaintiff's scope of work was not completed until August 2015, nearly 15 months after the substantial completion date set forth in the original schedule. (*Id.* ¶¶ 15, 17.) Despite Plaintiff incurring additional costs due to the extended project timeline, HBE has refused to compensate Plaintiff for such added costs. (*Id.* ¶¶ 20-22.)

On July 7, 2016, Plaintiff filed suit against Defendants based on five state-law causes of action: (1) misrepresentation against HBE; (2) quantum meruit against HBE; (3) breach of contract against HBE; (4) negligence against HDI; and (5) recovery on payment bond against Travelers and Continental. (*See generally id.*) After removing the case to federal court, HBE now moves for a stay of Plaintiff's claims pending the completion of arbitration as required by the subcontract. (Dkt. No. 7.)

## DISCUSSION

HBE moves to stay this action pending arbitration of Plaintiff's claims pursuant to 9 U.S.C. § 3. Plaintiff agrees that the subcontract between the parties "requires arbitration of all disputes arising from the contract" and that a stay of this case is appropriate. (Dkt. No. 15 at 2.) Plaintiff, however, raises two questions about arbitration: (1) whether the Federal Arbitration Act or the Construction Industry Arbitration Rules of the American Arbitration Association governs the arbitration; and (2) whether California, and not St. Louis, Missouri, is the proper venue for arbitration. (*See id.* at 4-8; Dkt. No. 16 at 8-15.) As to the first question, the governing set of rules is a procedural question for the arbitrator to decide; the Court therefore declines to resolve the question here. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) ("Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.").

As for the question of venue, the Court must determine whether the St. Louis, Missouri venue provision is valid and enforceable. Plaintiff argues that the provision is unenforceable under California Code of Civil Procedure § 410.42(a)(1) and thus the arbitration must occur in

1  California.  Section 410.42(a)(1) states:

> (a) The following provisions of a contract between the contractor and a subcontractor with principal offices in this state, for the construction of a public or private work of improvement in this state, shall be void and unenforceable:
>
> (1) A provision which purports to require any dispute between the parties to be litigated, arbitrated, or otherwise determined outside this state.

HBE responds that Section 410.42(a)(1) is preempted by the FAA and so the parties' agreed-upon venue provision must be enforced.  The FAA provides, in relevant part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "The final phrase of § 2 . . . permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'  This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

The key to resolving the parties' venue dispute then is determining whether Section 410.42(a)(1) is a generally applicable defense that applies to "any contract."  As the Court previously noted, the Ninth Circuit, through two separate three-judge panels, has issued conflicting decisions on the interpretation of "any contract" in (1) *Bradley v. Harris Research, Inc.*, 275 F.3d 884 (9th Cir. 2001), and (2) *Sakkab v. Luxottica Retail North America, Inc.*, 803 F.3d 425 (9th Cir. 2015).[3]  HBE urges the Court to follow the earlier *Bradley* decision (Dkt. No.

---

[3] The Court also brought the parties' attention to *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016).  As Plaintiff correctly notes, *Tompkins* is not relevant here because "[t]he basis for the claim of unconscionability came not from application of a state statute which declared its unconscionability as a matter of public policy[], but rather under general claims of

4

21 at 6-9), while Plaintiff argues that *Sakkab* controls because *Bradley*'s interpretation of "any contract" has been overruled by the Supreme Court's *Concepcion* decision (Dkt. No. 20 at 9-11).

### A.     *Bradley v. Harris Research, Inc.*

In *Bradley*, the district court had ordered the parties to participate in private arbitration in California rather than the agreed-upon venue of Utah because the franchise agreement's venue provision violated California Business & Professions Code § 20040.5, which provides: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." On appeal, the defendant argued that Section 20040.5 was preempted by the FAA, 9 U.S.C. § 2. The plaintiffs responded "that § 20040.5 is not preempted by the FAA because it treats arbitration and litigation equally and does not single out arbitration as a disfavored form of dispute resolution." *Id.* at 889. In addressing preemption, the Ninth Circuit reasoned that the Supreme Court's decisions in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) and *Perry v. Thomas*, 482 U.S. 483, "as well as the language of 9 U.S.C. § 2, indicate that a state law that invalidates arbitration agreements is not preempted by the FAA only if the law is 'generally applicable,' or applies to 'any contract.'" *Bradley*, 275 F.3d at 890 (quoting *Doctor's Assocs.*, 517 U.S. at 687; 9 U.S.C. § 2). The Ninth Circuit then noted that "Section 20040.5 applies only to forum selection clauses and only to franchise agreements; it therefore does not apply to 'any contract.'" *Id.* Accordingly, the court held that Section 20040.5 was preempted by the FAA. *Id.*

### B.     *Sakkab v. Luxottica Retail N. Am., Inc.*

In *Sakkab*, the Ninth Circuit asked "whether the FAA preempts the California rule announced in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348[ ](2014), which bars the waiver of representative claims under the Private Attorneys General Act of 2004 (PAGA), Cal. Lab. Code § 2698 *et seq.*" 803 F.3d at 427. To address this issue, the Ninth Circuit was similarly required to determine whether the *Iskanian* rule was a "ground[ ] . . . for the revocation

---

unconscionability as imposing an unreasonable or unjust burden on the plaintiffs." (Dkt. No. 20 at 13.) The Court therefore will not discuss *Tompkins* further.

5

1  of any contract." 9 U.S.C. § 2. The court concluded that it was such a ground, calling into doubt

2  *Bradley*'s "any contract" interpretation in light of the Supreme Court's intervening *Concepcion*

3  decision:

> Some of our cases can be read to suggest that the phrase "any contract" in § 2's saving clause requires that a defense apply generally to all *types* of contracts, in addition to requiring that the defense apply equally to arbitration and non-arbitration agreements. *See Ting v. AT & T*, 319 F.3d 1126, 1147-48 (9th Cir. 2003) (holding that California's Consumer Legal Remedies Act, Cal. Civ. Code § 1751, is "not a law of 'general applicability'" within the ambit of § 2's saving clause because it applies only to noncommercial consumer contracts); *Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001) (holding that California Business & Professions Code § 20040.5 does not apply to "any contract" because it "applies only to forum selection clauses and only to franchise agreements"). However, the Court's decision in *AT & T Mobility, LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742, cuts against this construction of the saving clause. The Court in *Concepcion* held that the FAA preempted California law providing that class action waivers in certain consumer contracts of adhesion were unconscionable and unenforceable. 131 S.Ct. at 1748-53. Even though the state-law rule at issue only applied to a narrow class of consumer contracts, the Court strongly implied that the rule was a "generally applicable contract defense[ ]." *See id.* at 1748. The Court held that the rule was preempted because it conflicted with the purposes of the FAA, even though the rule purported to apply to "any contract." *See id.* ("Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives.").
>
> Following the logic of *Concepcion*, we conclude that the *Iskanian* rule is a "generally applicable" contract defense that may be preserved by § 2's saving clause, provided it does not conflict with the FAA's purposes.

21  *Sakkab*, 803 F.3d at 432-33. The Ninth Circuit then concluded that the *Iskanian* rule did not

22  conflict with the purposes of the FAA and so held that the waiver of the plaintiff's representative

23  PAGA claims was unenforceable. *Id.* at 433-40.

24      **C.**    ***Bradley*** **is Binding Precedent.**

25      "Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved,

26  unless overruled by the court itself sitting en banc, or by the Supreme Court." *Hart v. Massanari*,

27  266 F.3d 1155, 1171 (9th Cir. 2001). However, "[a]lthough a three judge panel normally cannot

28  overrule a decision of a prior panel on a controlling question of law, [a three judge panel] may

1  overrule prior circuit authority without taking the case en banc when 'an intervening Supreme
2  Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely
3  on point.'" *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002) (internal
4  citations omitted).

5      Neither the Ninth Circuit sitting en banc nor the Supreme Court have overruled *Bradley*,
6  the earlier decision. Nor did the three-judge panel in *Sakkab* expressly overrule *Bradley* in light of
7  *Concepcion*; instead, the *Sakkab* court simply "follow[ed] the logic of *Concepcion*" in departing
8  from *Bradley*'s interpretation of "any contract."[4] *Sakkab*, 803 F.3d at 433. Absent an order
9  overruling the decision, *Bradley* remains good law in the Ninth Circuit and binding precedent on
10 the Court. The Court therefore must follow that decision, particularly given that *Bradley* is
11 directly on point with the facts of this case: Just as the Ninth Circuit found that Section 20040.5
12 did not apply to "any contract" because it "applie[d] only to forum selection clauses and only to
13 franchise agreements," *Bradley*, 275 F.3d at 890, Section 410.42(a)(1) also does not apply to "any
14 contract" because it applies only to forum selection clauses and only to contracts between a
15 contractor and a subcontractor with principal offices in California—not contracts generally.

16     Plaintiff attempts to distinguish *Bradley* by arguing that the provision at issue here, Section
17 410.42, was enacted pursuant to public policy whereas Section 20040.5 was not. (*See* Dkt. No. 22
18 at 2 ("[T]he state statute at issue in *Bradley* did not equate to the statute at issue here, which was
19 specifically supported by public policy pronouncements similar to the PAGA statute at issue in
20 [*Sakkab*]."). Not so. As the Ninth Circuit has stated, "We conclude and hold that § 20040.5
21 expresses a strong public policy of the State of California to protect California franchisees from
22 the expense, inconvenience, and possible prejudice of litigating in a non-California venue." *Jones
23 v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

24     Accordingly, under the Ninth Circuit's *Bradley* decision, Section 410.42(a)(1) is not
25 protected by the savings clause and is therefore preempted by the FAA.

---

[4] Though *Sakkab* did not overrule *Bradley*, the panel called into doubt the decision based on *Concepcion*. *Bradley* and *Concepcion*, however, are not necessarily irreconcilable, as *Concepcion* did not resolve the interpretation of "any contract" in the savings clause but rather focused on whether the disputed California law contravened the FAA's purposes.

**CONCLUSION**

For the reasons stated above, the Court GRANTS HBE's motion to stay pending arbitration. Further, the Court holds that California Code of Civil Procedure § 410.42(a)(1) is preempted by the FAA; Section 410.42(a)(1) therefore does not render the St. Louis, Missouri venue provision unenforceable. The parties shall submit a joint status report to the Court within 30 days of receiving the arbitrator's decision.

**IT IS SO ORDERED.**

Dated: January 23, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge